UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10339-PJB |
| | ) | NH CR04-213-01-PB |
| TIMOTHY P. SCHROEDER and | ) | |
| STEVEN A. MILKIEWICZ, | ) | |
| | ) | |
| Defendants. | ) | |

## OPPOSITION TO MOTION TO QUASH SUBPOENA SERVED UPON THIRD PARTY WITNESS CLERK OF COURT

Defendant Steven A. Milkiewicz submits this Opposition to what is entitled "Motion to Quash Subpoena Served Upon Third Party Witness Clerk of Court." This Motion arises out of a subpoena directed to Christine Karjel, whom undersigned counsel understands to be the Financial Administrator at the United States Court in Massachusetts.[1] See Clerk's Office Motion, at 1.

As the Court is well aware, this criminal case is scheduled for trial on September 6, 2005, in Boston. In anticipation of that trial, Mr. Milkiewicz's subpoena requests narrow categories of documents highly material to his defense, as discussed in more detail below. Accordingly, the Motion to Quash should be denied.

---

[1] Thus, the Motion to Quash will be referred to as the Clerk's Office's Motion to Quash.

## FACTS

### Facts Alleged in the Indictment Relevant to Motion to Quash

The facts relevant to the Court's decision on this Motion to Quash are as follows. Defendant Steven Milkiewicz has worked for many years as a vendor/broker selling office supplies and furnishings to many different departments at the courthouse and elsewhere, including the Clerk of Courts for the United States District Court for the District of Massachusetts. See Superseding Indictment, ¶8, 9. Mr. Milkiewicz ran his own supply businesses and, prior to that, worked for other supply companies. Id., ¶8.

The government alleges that Mr. Milkiewicz was part of a scheme to defraud the government. The superseding indictment alleges that Mr. Milkiewicz conspired with Timothy Schroeder, the Property and Procurement Administrator for the Clerk's Office (Id., ¶2), to defraud the government in three main ways: (1) by charging for goods not delivered (Id. ¶13), (2) by paying kick-backs to Mr. Schroeder from these activities (Id. ¶14) and (3) by "bid rigging" (Id. ¶12).[2] Based on these allegations, the superseding indictment charges Mr. Milkiewicz with conspiracy (Count I), False Claims Against the United States (Counts 2-9), Bribery of a Public Official (Count 11), and Filing False Tax Returns (Counts 17-21).

The first two theories of the indictment are fairly self-explanatory. The third, the bid-rigging allegations, focus primarily on the theory that Mr. Milkiewicz rigged "bids" to win the Clerk's Office's business. Specifically, the indictment says, "[t]he scheme worked in several

---

[2] The "bid rigging" are to be the subject of a Motion in Limine to exclude references to "bid rigging" as there was no bidding process to be rigged. But, for the meantime, these allegations remain a part of the case and therefore, evidence related to those allegations is highly relevant.

different ways, all designed to ensure that the defendants controlled the bidding process and prevented open and fair competitive bidding." The indictment charges that, "[a]t times pertinent to this Indictment, procurement regulations under which defendant Schroeder operated and internal policies followed by the Court required that Schroeder to obtain [sic] multiple quotes and bids for contracts above a fixed dollar threshold." Indictment, ¶5. The government alleges that, "[a] major purpose and objective of the conspiracy was to enable Milkiewicz to profit from selling goods and services to the Court, without submitting to genuine competitive bidding." Id. ¶12. And the government summarizes its various theories by stating that, "[t]he result of these various sham bidding arrangements was to create the false impression that defendant Schroeder had complied with <u>rules and regulations that required the solicitation of multiple bids</u>." Id., ¶19 (emphasis added). The quotes, which the government treats as "bids," are a critical component of the government's "bid rigging" allegations. Six of the eleven overt acts alleged in the conspiracy count allege that Mr. Milkiewicz submitted, or caused to be submitted, more than one price quote for particular jobs.[3]

## Facts Related to Requests for Documents

Undersigned counsel attempted to request documents for Mr. Milkiewicz's defense through in an informal process by which the government acted as a liaison with individuals at the courthouse.[4] Specifically, by a letter dated April 4, 2005 (attached as Exhibit 1) the government

---

[3] These transactions are those described under the following headings in Count I: "December 1998-January 1999 Transaction"; "January-February 2000 Transaction"; "April 2000 Transaction"; "August 2000 Transaction"; "September-October 2001 Transaction"; March-April 2002 Transaction."

[4] Defendant in no way represents that the government conceded that these documents were relevant and material; rather, this was a cooperative effort designed to avoid discovery disputes.

acted as a liaison to request certain documents undersigned counsel believed material to Mr. Milkiewicz's defense. Id. As the Court will see from that letter, the goal was to use a two-tiered process: first, to request summary printouts of relevant data, and second, if necessary, request the back-up documentation (such as "bids," vouchers, invoices and checks) for certain of those transactions described only in skeletal fashion on the summary printouts. The vast majority of the two file folders (approximately six to nine inches each) produced during the "first tier" were summary data apparently produced via a query on a computerized financial system. Peirce Aff., ¶5. Only six small stapled documents were of the "back-up" variety (voucher, invoice, etc.); those documents were related to sales to the Probation department. Id.

Undersigned counsel received summary printouts and, as planned, followed up with a list of specific transactions for which back-up was necessary. See letter of July 20, 2005 attached as Exhibit 2. Undersigned counsel was then informed by AUSA Levenson that Mr. Frank Dello Russo at the Clerk's Office would prefer to respond via subpoena rather than informally. Peirce Aff. ¶6. Undersigned counsel contacted Mr. Dello Russo to confirm and Mr. Dello Russo agreed to accept service of the subpoena directed to Ms. Karjel. Id.[5] In the cover letter to Mr. Dello Russo enclosing that subpoena (attached as Exhibit 3), which letter was not submitted to the Court with the Motion to Quash, undersigned counsel made clear that we did not expect our work to be done for us; rather, we remain willing and able to review documents ourselves, if the Clerk's Office will simply make those documents available. Id.

---

[5] The subpoena added six discrete items to that which had been previously requested, items #2, #3, #4, #5, #6, #7.

## ARGUMENT

To defend against the allegations described above, Mr. Milkiewicz has sought a narrow, carefully-tailored list of nine documents and/or categories of documents. Undersigned counsel has worked with the Clerk's Office's counsel to narrow the dispute over the subpoenaed documents. Peirce Aff., ¶8. For the reasons described below, those remaining documents are highly relevant to refute the government's allegations at trial. Far from being oppressive or burdensome, defendant has attempted, through the two-tiered approach, to pare down to a minimum the back-up documents it needs from the summary printouts of some of the thousands of transactions at the courthouse over the many years covered by the indictment and beyond. Notably, virtually all of what defendant has received from that process (minus six small, stapled bundles of documents) were summary printouts. Peirce Aff., ¶5. Thus, it is reasonable to assume that the vast majority of the 60-80 hours Mr. Dello Russo says have been spent gathering documents were spent gathering documents for the government; certainly, it is reasonable for defendant to request some time to uncover documents the government did not believe relevant to building its case against Mr. Milkiewicz and that may be exculpatory. Each request in dispute is addressed below and numbered to correspond with Schedule A to the subpoena:

1. *"All underlying documentation (including price quotes, bids, purchase orders, packing slips, invoices, payment vouchers, checks, and other related documents) for the transactions listed in Exhibit 1 (attached hereto);"*

This request was carefully drafted after sifting through voluminous summary printouts reflecting thousands of transactions. Peirce Aff., ¶¶5 and 6. Because defendant had no way of

knowing the manner in which these documents are stored, all information available was included on the chart attached to the subpoena. Id. Thus, rather than expect the Clerk's Office to respond to broad, amorphous requests, defendant created, with great effort and care, a detailed chart that includes (1) the invoice number, (2) the date, (3) purchase order number, (4) vendor name, (5) voucher number, and (6) product – all carefully gleaned from the summary printouts and placed in a chart form to make it easier for those documents to be located. This specificity, and the level of detail provided to assist in locating the documents, is just the opposite of "burdensome" or oppressive. Moreover, we would be happy to provide the Clerk's Office's counsel with a revised version of the chart organized in whatever way will make it easiest to follow. Peirce Aff., ¶7. Furthermore, the Clerk's Office's contention that copying these documents requires "senior staff" is disingenuous at best. And, given the Clerk's Office's clarification that many of the documents on the chart are in other departments' possession and control, the work involved to respond is greatly reduced.

More importantly, these documents are highly relevant to Mr. Milkiewicz's defense for several reasons. First, a key allegation in the superseding indictment is that Mr. Milkiewicz "rigged bids" for work he did with the Court. Defendant disagrees that there was even a legally-binding "bidding" process, and also has reason to believe that bids and quotes were not routinely obtained, as the government alleges. Peirce Aff., ¶9. Accordingly, the documents requested – or, the nonexistence of such documents – will help Mr. Milkiewicz show that there was no bidding process that he could have rigged.

Second, some of the items on the chart were sold to the Court by other vendors, but are the same as, or similar to, items Mr. Milkiewicz sold to the Court. These transactions negate

6

criminal intent by showing that Mr. Milkiewicz's prices were comparable and often better than those of his competitors, despite the allegations that he gouged the Court through "excess charges" (Indictment ¶23). Certainly, defendant is entitled to examine evidence that Mr. Milkiewicz routinely saved the Court money, as this savings is inconsistent with the government's allegations that it "overpaid for many of the supplies it purchased" (Indictment, ¶22). Thus, The Clerk's Office's counsel's statement that he "compared" this list with the indictment and "few, if any, of the line items correspond to charged acts" is simply irrelevant.

Mr. Dello Russo's affidavit, provided in support of the Motion to Quash, appears to say that defendant already has a portion of the underlying documents in this request, namely, the "price quotes, bids, purchase orders, packing slips." Dello Russo Aff., ¶5.  This paragraph appears to say that the sole copies of the price quotes, bids, purchase orders and packing slips were stored in Mr. Schroeder's office and, therefore, were seized during a search of his office. Id.  Even assuming this is the case, there are still several categories request in items #1 and #2 of the subpoena that Mr. Dello Russo makes clear were not located in Schroeder's office, namely, "invoices, payment vouchers, checks, and other related documents" and should be turned over. And, it certainly seems reasonable for defendant to have an opportunity to determine if the stored files include any of the "bids" that the government relies on so heavily here, even if the normal practice was for those to be stored in Mr. Schroeder's office.  Indeed, based on Mr. Dello Russo's affidavit, it appears that, while most quotes were kept by the procurement person, quotes were, on occasion, filed with the financial department's documents.  Dello Russo Aff., ¶5.

7

3.   T*he independent auditor's report of financial related activities of the United States District Court for the District of Massachusetts, for the review conducted on or about April of 2005;*

The Clerk's Office states that this report is not yet available. Defendant requests that the

Court order that report to be provided to Mr. Milkiewicz's counsel immediately upon receipt.

5.   *"All Acquisition Bulletins relating to procurement for the period of 1996-2005;"*

6.   *"All chapters of the "Guide to Judiciary Policies and Procedures Administrative Manual," covering the periods of 1997 to the present, and including all different versions of that manual in effect during that period;"*

The Clerk's Office's Motion takes the position that, while it has access to the current, online version of the Bulletin and Guide, defendant must, nonetheless, seek those documents through the Administrative Office. The rules embodied in the documents requested in items #5 and #6 are the core of the government's bid-rigging allegations. See indictment, ¶5 ("At all times pertinent to this Indictment, procurement regulations under which defendant SCHROEDER operated and internal policies followed by the Court required that SCHROEDER to obtain [sic] multiple quotes and bids for contracts above a certain dollar amount.") It is critical that defendant be permitted to see the rules that the government believes form the basis of criminal charges against Mr. Milkiewicz.

Even if the older permutations of those documents are not available, the online version is clearly in The Clerk's Office's possession and control and, therefore, should be turned over to defendant.[6]

STEVEN A. MILKIEWICZ,
By his attorneys,


_____/s/     Michelle R. Peirce_
Bruce A. Singal, BBO#464420
Michelle R. Peirce, BBO #557316
Carl E. Fumarola, BBO #659019
Donoghue, Barrett & Singal, P.C.
One Beacon Street, Suite 1320
Boston, MA  02108
(617) 720-5090

Dated:   August 24, 2005

## CERTIFICATE OF SERVICE

I, Michelle R. Peirce, hereby certify that I have caused copies of the foregoing document to be served upon by first class mail, postage prepaid to be served upon Maryanne Michaelis, Clerk, United States District Court, District of New Hampshire, 55 Pleasant Street, Room 110, Concord, NH 03301-3941; Paul Levenson, Assistant U.S. Attorney, United States Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA  02210; and Thomas A. Reed, Esq., Holtz & Reed, LLP, 25 New Chardon Street, Boston, MA  02114, this 24th day of August, 2005.


_____/s/     Michelle R. Peirce_
Michelle R. Peirce

---

[6] Undersigned counsel believes that we have reached an agreement acceptable to both parties regarding request #2. Defendant reserves his right to renew this request if that agreement does not lead to production of the documents as agreed. Defendant is not pursuing at this time requests #8 and #9 but does not waive his right to renew this request.

## DONOGHUE BARRETT & SINGAL, P.C.

April 4, 2005

**By Facsimile & First Class Mail**

Paul G. Levenson, Assistant U.S. Attorney
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA  02210

> RE:    United States v. Steven A. Milkiewicz, Crim. No. 04-10339-PJB
>           NH  CR04-213-01-PB

Dear Paul:

I am writing to follow up on our discussion on March 22, 2005, of various discovery issues.

First, thank you for the copy of the binder you sent me after that meeting with the documents shown to the grand jury. I believe you were also going to send me a copy of Tim Schroeder's cooperation agreement once it is finalized; I am assuming it has not been finalized but look forward to receiving it.

We also discussed making a joint request for documents defendant believes are material to the preparation of Mr. Milkiewicz's defense. I appreciate your willingness to take this joint approach and am hopeful we can resolve the bulk of our disagreement through this approach.

Per that discussion, what follows is my attempt to focus a request in a way that can be responded to relatively easily, as it is not our goal to burden you or the people who will be responding to these requests. The approach below also allows a "tiered" approach in that, in certain instances, we request summary printouts with an eye toward requesting, if necessary, underlying documentation for certain transactions noted in the summary.

DONOGHUE BARRETT & SINGAL, P.C.

Paul G. Levenson, Assistant U.S. Attorney
April 4, 2005
Page 2


Specifically, it is our understanding that each product, or group of products, has an associated code and that the finance department could print the list of transactions using this code; that printout (like those provided to defendant through automatic discovery) would include check numbers and vouchers numbers which should make it relatively easy to track down the supporting documentation thereafter, if necessary. Likewise, each vendor has a unique code that should make it extremely easy to print out lists of transactions/information. Thus, for each of the requests below, we could obtain the print out and then, after a review, select the transactions, if any, for which we would like to see the underlying documentation, where available.

My hope is that, by attempting this collaborative approach, we can obtain most, if not all, of what we need, without involving the Court. However, defendant does not waive his right to request these or additional documents in the future.

Following is what I propose we request jointly from the Clerk's Office. We are also requesting similar printouts from certain other departments as it is our understanding that those should be fairly easy to generate:

1. We are seeking documents (quotes, bids, purchase orders, vouchers, invoices, receipts) related to purchases by the Clerk's Office from 1996-2003 from other vendors (not J. Cameron or C.J. Sales) of the types of products specified in the indictment, namely (a) checking envelopes (see para. 24), (b) bar-code labels (see para. 25), (c) copy paper, (d) toner cartridge (see, e.g., para 32) and (e) stationary (para. 43). As noted above, we could approach this in two stages, first, get a list and second, if necessary, request documents for certain transactions.[1]

2. We are seeking documents (quotes, bids, purchase orders, vouchers, invoices, receipts) related to purchases by the Clerk's Office from 1996-2003 from other vendors (not J. Cameron or C.J. Sales) of the types of products for which the government alleges a loss in the indictment, namely, the items delineated on the spreadsheet under the headings "net receipt" and "profit gained by shortage." (Paul, I can list these in an attachment if you think that would make it easier.) As noted above, we could obtain the print out using the product codes and then, after a review, select the transactions, if any, for which we would like to see the underlying documentation.

---

[1] It is also my understanding that each procurement person followed their own practices regarding saving documentation related to purchasing and those individuals may possess some of the documents sought.

DONOGHUE BARRETT & SINGAL, P.C.

Paul G. Levenson, Assistant U.S. Attorney
April 4, 2005
Page 3

3. We are also seeking the same documents (quotes, bids, purchase orders, vouchers, invoices, receipts) for the Clerk's Office's, Probation, and U.S. Pretrial purchases from 1994-1997 from Tracey Sales. Again, I propose generating a list of each vendor's sales to the Clerk's Office; we can later determine what underlying documentation, if any, is needed.

4. We are requesting quotes, bids, purchase orders, vouchers, receipts, invoices, and other purchase-related documentation for sales to the Clerk's Office, U.S. Pretrial, Probation, or the U.S. Attorney's Office from 1997-2002 from Amherst Equipment and/or Fens Associates.

5. Audit reports from (a) audits conducted by, or at the request of, the Administrative Office and/or (b) internal audits, that address in whole or in part the procurement policies/practices of the Clerk's Office during, or covering, the period from 1997 through 2002.

6. Timothy Schroeder's personnel file.

7. This request is the same as #3 above except that we are requesting similar printouts from purchases made by : (1) Probation, (2) Pretrial Services, (3) U.S. Attorney's Office, (4) U.S. Marshall's Office, (5) Court of Appeals.

8. We are also seeking the same documents (quotes, bids, purchase orders, vouchers, invoices, receipts) for J. Cameron's and C.J. Sales' business from 1996-2002 with other departments located at the Courthouse, namely: (1) Probation, (2) Pretrial Services, (3) U.S. Attorney's Office, (4) U.S. Marshall's Office, (5) Court of Appeals. We also recommend the two-tiered approach to this request.

Once you have had a chance to review this proposed request, I can turn it into a letter from both of us which I would then send to you for final approval and transmittal.

Please contact me to discuss the requests at your earliest convenience.

Very truly yours,

Michelle R. Peirce

DONOGHUE BARRETT & SINGAL, P.C.

July 20, 2005

**E-Mail & First Class Mail**

Paul G. Levenson, Assistant U.S. Attorney
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA 02210

      RE:    United States v. Steven A. Milkiewicz, Crim. No. 04-10339-PJB; NH CR04-213-01-PB

Dear Paul:

      Thank you for your cooperation with the joint request for the summary printouts. As we contemplated when making the request, I am now writing to follow-up on select transactions that are material to the preparation of Mr. Milkiewicz's defense. I seek the following:

      (1) all underlying documentation (including price quotes, bids, purchase orders, packing slips, invoices, payment vouchers, checks, and other related documents) for the transactions listed in Exhibit A. I understand that this request is lengthy, and I do not wish to burden you or the Clerk's Office. I propose that we make arrangements for the documents to be available and then my firm can review the documents for what we need.

      (2) a summary printout of all transactions of Tracy Sales with the Clerk's Office, Probation, and Pretrial Services for the period of 1991 to 2002; and

      (3) a summary printout of all furniture acquisitions for the Probation office in Lawrence for the period of 1997 to 2002.

      Thanks again for your cooperation. Please contact me if you have any questions or wish to further discuss this request.

                Very truly yours,

                Michelle R. Peirce

Enclosure

**A**

**Follow-Up Document Requests**

| | Purchase Order No. | Date | Vendor Name | Invoice No. | Voucher No. | Product |
|---|---|---|---|---|---|---|
| 1. | 13325 | 9/6/02 | Carter McLeod | 004637-00 | 115564 | Copy Paper |
| 2. | 13649 | 12/9/02 | Carter McLeod | 008186-00 | 118961 | Brite WH Paper |
| 3. | 13823 | 2/19/03 | Carter McLeod | 0104870-0 | 121469 | Brite WH Paper |
| 4. | 13974 | 4/22/03 | Carter McLeod | 012480-01 | 123425 | Brite WH Paper |
| 5. | 5930 | 2/29/69 | Carter McLeod | 036090 | 42677 | Copy Paper |
| 6. | 6307 | 7/3/96 | Carter McLeod | 040569 | 46127 | Copy Paper |
| 7. | 7082 | 2/21/97 | Carter McLeod | 048814 | 52782 | 2 cartons of Paper |
| 8. | 13276 | 8/14/02 | Knoll | | | Springfield |
| 9. | 13276 | 8/14/02 | Knoll | | | Cubicle Springfield |

| 10. | 13276 | 8/14/02 | Knoll | 118132 | Cubicle Springfield |
|-----|-------|---------|-------|--------|---------------------|
| 11. | 13276 | 8/14/02 | Knoll | 118132 | Electrification for Panels |
| 12. | 6502 | 9/4/96 | Knoll | | System Furniture |
| 13. | 6502 | 9/4/96 | Knoll | | System Furniture |
| 14. | 6502 | 9/4/96 | Knoll | 52732 | System Furniture |
| 15. | 6502 | 9/4/96 | Knoll | | System Furniture |
| 16. | 6502 | 9/4/96 | Knoll | 55716 | System Furniture |
| 17. | 6502 | 9/4/96 | Knoll | | System Furniture |
| 18. | 11281 | 9/8/00 | Stuart Swan Furniture | 93669 | Chair Judge Wolf |
| 19. | 12319 | 9/4/01 | Dictronics | 102537 | CCP-1300 RF/D |
| 20. | 12319 | 9/4/01 | Dictronics | 102537 | Shipping |

-2-

| | | | | |
|---|---|---|---|---|
| 21. | 13432 | 9/24/02 | Made to Order Stamp & Seal | | Electronic Seal |
| 22. | 13432 | 9/24/02 | Made to Order Stamp & Seal | | Desktop Seal Long Reach Model |
| 23. | 6527 | 9/12/96 | ASC Office Furniture | 52377 | See attached list |
| 24. | 6527 | 9/12/96 | ASC Office Furniture | | See attached list |
| 25. | 6527 | 9/12/96 | ASC Office Furniture | 52377 | See attached list |
| 26. | 10173 | 9/17/99 | Charles Webb | 80430 | Mission Arm Chair |
| 27. | 10173 | 9/17/99 | Charles Webb | 80430 | Conference Table 8' Trestle Table |
| 28. | 10173 | 9/17/99 | Charles Webb | 80430 | High Back Chair Side |
| 29. | 10173 | 9/17/99 | Charles Webb | 80430 | High Back Arm Chair |
| 30. | 10173 | 9/17/99 | Charles Webb | 80430 | Table |
| 31. | 10173 | 9/17/99 | Charles Webb | 81102 | Fabric Miranda Red |

| 32. | 11149 | 7/25/00 | Citibank | Order #0729002FV | | Bowler's Fleurie Wood Chair |
|-----|-------|---------|----------|------------------|--|-----------------------------|
| 33. | 11149 | 7/25/00 | Citibank | Order #0729002FV | | Bowler's Fleurie Wood Chair Mattisee Blue |
| 34. | 11149 | 7/25/00 | Citibank | | | Chair for J. Keeton |
| 35. | 11149 | 7/25/00 | Citibank | | | Kenmore Ref for Saris |
| 36. | 11149 | 7/25/00 | Citibank | | | Vacuum for Stearns |
| 37. | 11149 | 7/25/00 | Citibank | | | TV Cart |
| 38. | 9722 | 5/7/99 | Creative Office Pavilion | | | Partitions for Boston Courthouse |
| 39. | 9722 | 5/7/99 | Creative Office Pavilion | | 85391 | Partitions for Boston Courthouse |
| 40. | 9722 | 5/7/99 | Creative Office Pavilion | 81484 Order #4S548 | 85391 | Partitions for Boston Courthouse |
| 41. | 14426 | 9/30/03 | Executive Furniture | | | Chair J. Wolf |
| 42. | 14426 | 9/30/03 | Executive Furniture | | | Chair J. Alexander |

-4-

| | | | | | |
|---|---|---|---|---|---|
| 43. | 12614 | 12/6/01 | Executive Furniture | | Freight on P.O. 12360, 12359 |
| 44. | 12614 | 12/6/01 | Executive Furniture | 118355 | Computer Tables J. Collings |
| 45. | 12614 | 12/6/01 | Executive Furniture | 118355 | Keyboard Trays |
| 46. | 12614 | 12/6/01 | Executive Furniture | 118355 | Freight |
| 47. | 12614 | 12/6/01 | Executive Furniture | 118355 | Mobile Pedestal G. Hurley |
| 48. | 12614 | 12/6/01 | Executive Furniture | 118355 | Reception Chairs J. Saris |
| 49. | 14187 | 7/15/03 | Executive Furniture | 127738 | Magazine Table J. Ponsor |
| 50. | 14187 | 7/15/03 | Executive Furniture | 127738 | Dock Delivery |
| 51. | 8843 | 9/23/98 | Fens Associates | | Install Workstations |
| 52. | 8843 | 9/23/98 | Fens Associates | | System Furniture |
| 53. | 8843 | 9/23/98 | Fens Associates | 990819, 990831, 990826, 990821, 990842 | Various Internal Moves & Deliveries to & from Clths |

| | | | | | | |
|---|---|---|---|---|---|---|
| 54. | 8843 | 9/23/98 | Fens Associates | 990847, 990837, 990721, 990717, 990712 | 79295 | Attached Work Sheets |
| 55. | 8843 | 9/23/98 | Fens Associates | 990814, 990808, 990804, 990807, 990805 | 79295 | Attached Work Sheets |
| 56. | 8843 | 9/23/98 | Fens Associates | 990727, 990728, 990702, 990726, 990901, 990902, 990903 | 79295 | See Attached Work Sheet |
| 57. | 8843 | 9/23/98 | Fens Associates | | | Assembly of Work Stations |
| 58. | 8843 | 9/23/98 | Fens Associates | | | Assembly of Work Stations |
| 59. | 8843 | 9/23/98 | Fens Associates | 990920, 990919, 990911 | 79985 | Attached Work Sheet |
| 60. | 8843 | 9/23/98 | Fens Associates | | 85743 | Putting Together Work Stations |
| 61. | 6610 | 9/27/96 | GSA [Fens Associates] | | | File Cabinets for New Courthouse |
| 62. | 6610 | 9/27/96 | GSA [Fens Associates] | | 62988 | File Cabinets for New Courthouse |
| 63. | 6610 | 9/27/96 | GSA [Fens Associates] | N98105076 | 65682 | Filing Cabinets |

| # | | Date | Vendor | | Description |
|---|---|---|---|---|---|
| 64. | 6610 | 9/27/96 | GSA [Fens Associates] | 66728 | File Cabinets |
| 65. | 12131 | 6/19/01 | Herman Miller | | Jury Rm/Doug, Darline Cubicles |
| 66. | 12131 | 6/19/01 | Herman Miller | | Product for Jury Rm/Doug, Darline |
| 67. | 12131 | 6/19/01 | Herman Miller | 106929 | Design |
| 68. | 12131 | 6/19/01 | Herman Miller | 106929 | Installation |
| 69. | 12131 | 6/19/01 | Herman Miller | 106929 | Iff |
| 70. | 12131 | 6/19/01 | Herman Miller | 106929 | Materials Jury, Doug/Darline Cubicles |
| 71. | 12437 | 9/27/01 | Herman Miller | | System Furniture |
| 72. | 12437 | 9/27/01 | Herman Miller | | Product Docket Cubicles |
| 73. | 12437 | 9/27/01 | Herman Miller | 113989 | Iff Docket Cubicles |
| 74. | 12437 | 9/27/01 | Herman Miller | 113989 | Installation Docket Cubicles |

| | | | | | |
|---|---|---|---|---|---|
| 75. | 12437 | 9/27/01 | Herman Miller | 113989 | Product "Open Market Items Included" |
| 76. | 13125 | 6/21/02 | Herman Miller | | Product 2 Accounting, 2 QA Cubicles |
| 77. | 13125 | 6/21/02 | Herman Miller | | Installation for Cubicles |
| 78. | 13125 | 6/21/02 | Herman Miller | | Iff |
| 79. | 13125 | 6/21/02 | Herman Miller | 120496 | Stacking Panels for Docket Section |
| 80. | 13125 | 6/21/02 | Herman Miller | 120496 | Labor for Docket Section |
| 81. | 13125 | 6/21/02 | Herman Miller | 120496 | Iff |
| 82. | 6095 | 4/24/96 | New England Office Supply | 44154 | Red Folders -Kristin Quinn |
| 83. | 6216 | 6/5/96 | New England Office Supply | 314912-0 | 45345 | NCR 3 Par Rolls – Intake Receipt Machine |
| 84. | 13615 | 11/26/02 | New England Office Supply | 118964 | Adding Machine Rolls Cashier |
| 85. | 6750 | 10/31/96 | New England Office Supply | 339243-0 | 49862 | Letter Size Pressboard- Kardex Folders |

| # | | Date | Vendor | | | Description |
|---|---|---|---|---|---|---|
| 86. | 14078 | 6/4/03 | New England Office Supply | 1216360-0 | 125339 | 3 Ply Add Rolls for Cashier |
| 87. | 6306 | 7/3/96 | New England Office Supply | 320848-0 | 46129 | Mailing Envelopes |
| 88. | 8249 | 2/17/98 | B B Office Machine | 9071 | | Labels w/ Bard Code and Case Numbers |
| 89. | 5827 | 1/23/96 | B&B Graphics | 055587 | 41859 | Stamps/Date Stamp |
| 90. | 14331 | 9/12/03 | Benjamin Franklin Smith Printing | | | Copy Questionnaires "Sampson Trial" |
| 91. | 14331 | 9/12/03 | Benjamin Franklin Smith Printing | 316941 | 129582 | Questionnaires Scaned to CD J. Wolf Sampson |
| 92. | 14362 | 9/23/03 | Benjamin Franklin Smith Printing | 316942 | 129588 | Copying Questionnaires 1-150 J. Wolf Sampson |
| 93. | 14362 | 9/23/03 | Benjamin Franklin Smith Printing | 316940 | 129588 | Copying Questionnaires 151-729 J. Wolf Sampson |
| 94. | 14362 | 9/23/03 | Benjamin Franklin Smith Printing | | | Copying 1-729 3 sets |
| 95. | 14362 | 9/23/03 | Benjamin Franklin Smith Printing | 317510 | 129588 | Copying Questionnaires 1-729 3 sets J. Wolf Sampson |
| 96. | 7389 | 6/4/97 | Unicor | | | Printed Envelopes for J. Ponsor |

| 97. | 8481 | 5/15/98 | Unicor | 985400989PRF | 65724 | Envelopes |
| 98. | 9563 | 3/17/99 | Unicor | 995400718PRF | 74168 | Envelopes for Judge Ponsor |
| 99. | 9703 | 4/30/99 | Unicor | 990700637PRF | 75567 | Criminal Courtnote from Printed |
| 100. | 9937 | 7/22/99 | Unicor | 995401413PRF | 77656 | White and Brown Envelopes for Boston Courthouse |
| 101. | 9937 | 7/22/99 | Unicor | 990700884PRF | 77656 | Criminal Courtnote |
| 102. | 5886 | 2/13/96 | United Business System | 7930 | 42421 | Custom Strip Labels - CV/CR Case |

| 103. | E3111-6 | 5/6/97 | Fens Associates | 63272 | Delivery & Installation of 7E3111-4 & 5 |
|------|---------|--------|-----------------|-------|------------------------------------------|
| 104. | _E3111-10 | 8/10/98 | Fens Associates | | Delivery and Install of 3111-8 & 3111-9 |
| 105. | 8E3111-13 | 9/18/98 | Fens Associates | | Delivery, Installation and Debris Removal of 8E3111-12 |
| 106. | E3111-3 | 10/29/98 | Fens Associates | 70044 | Design and Labor for Systems Furniture for Clerks Office |
| 107. | E3111L6 | 1/14/99 | Fens Associates | 77768 | Receive, Delivery, Install and Debris Removal for FQ1773 |
| 108. | _E3111L8 | 1/14/99 | Fens Associates | 77767 | Receive, Deliver, Install and Debris Removal of L3; L4 & L7 |
| 109. | 1E3111L10 | 1/22/99 | Knoll | | Workstations for Four Law Clerks in Judge Lipez' Portland Chambers |
| 110. | 1E3111L10 | 1/22/99 | Knoll | 77771 | Installation of the Above |
| 111. | 1E3111L10 | 1/22/99 | Knoll | 77771 | Design of the Above |

-11-

| 112. | 1E3111L.10 | 1/22/99 | Knoll | 77771 | Furniture for Judge Lipez Law Clerks in Portland |
|------|------------|---------|-------|-------|--------------------------------------------------|
| 113. | _E3111-11 | 7/10/01 | Fens Associates | | Labor, Freight, Installation & Debris Removal of PO 1E3111-10 |
| 114. | E3111-9 | 7/10/01 | Fens Associates | 104643 | Labor, Freight, Installation – Debris Removal for PO 1E3111-8 |
| 115. | E3111-9 | 7/10/01 | Fens Associates | 104643 | Labor, Freight, Installation, Etc. For PO 1E3111-10 (Camp) |
| 116. | E3111-9 | 7/10/01 | Fens Associates | 104643 | Labor, Freight, Install, Etc. For PO 1E3111-14 (B. Manford) |
| 117. | E3111-9 | 7/10/01 | Fens Associates | 104643 | Freight, Labor & Install, Etc. For PO 1E3111-14 (G. Wente Desk) |
| 118. | E3111-16 | 6/17/02 | Office Specialty | 116467 | Plastic Laminate Top |
| 119. | E3111-17 | 6/17/02 | Fens Associates | 118988 | Labor to Receive, Redeliver Office Specialty Tops |
| 120. | _E3111-32 | 9/28/02 | Fens Associates | | Design Fees for J. Howard's Chamber |

| | | | | | |
|---|---|---|---|---|---|
| 121. | 98PSA192 | 9/20/98 | Kimbal Int'l Marketing | | |
| 122. | 98PSA192 | 9/20/98 | Kimbal Int'l Marketing | 69853 | Office Furniture Boston 98 |
| 123. | 98PSA192 | 9/20/98 | Kimbal Int'l Marketing | | |
| 124. | 98PSA193 | 9/30/98 | National Office Furniture | | |
| 125. | 98PSA193 | 9/30/98 | National Office Furniture | | |
| 126. | 98PSA193 | 9/30/98 | National Office Furniture | 70455 | Chairs Boston Office |
| 127. | 99PSA150 | 6/3/99 | Richard Wilcox | | |
| 128. | 99PSA150 | 6/3/99 | Richard Wilcox | | Letter Size Tiers Boston Office |
| 129. | 99PSA150 | 6/3/99 | Richard Wilcox | 78019 | Letter Starter Boston Office |
| 130. | 00PSA257 | 9/29/00 | Kimball Int'l Marketing | | |
| 131. | 00PSA257 | 9/29/00 | Kimball Int'l Marketing | 94154 | Furniture |

| # | | | | | | |
|---|---|---|---|---|---|---|
| 132. | P02-656 | 5/20/02 | Executive Furniture | | 113261 | Two Drawer Lateral File Central Locking, Wood Top - Royale Walnut |
| 133. | P02-656 | 5/20/02 | Executive Furniture | | 113261 | Inside Delivery and Installation |
| 134. | P02-1066 | 9/27/02 | Fens Associates | | 121599 | Labor to Receive, redeliver and Install (2) Superior Chairs |
| 135. | P01-819 | 8/29/01 | Kimball Int'l Marketing | | | Senator Series Four Drawer Lateral File w/ Lock |
| 136. | P01-819 | 8/29/01 | Kimball Intl Marketing | 5556964 | 103879 | Lateral File, Freestanding, Four Drawer |
| 137. | P00-766 | 9/29/00 | Richards Wilcox | | | Furniture |
| 138. | P00-766 | 9/29/00 | Richards Wilcox | | 101056 | Time-2 Speed Files |
| 139. | P00-766 | 9/29/00 | Richards Wilcox | | 101056 | Installation Related Services |
| 140. | _12601054 | 1/24/01 | Donnegan Systems | 81361 | 94507 | |
| 141. | _12601073 | 2/23/01 | Donnegan Systems | b13096 | 95646 | |
| 142. | C72601095 | 6/24/97 | Acme Office Systems | | 60619 | Record Storage Boxes WHN |

| 143. | C72601095 | 6/24/97 | Acme Office Systems | | Additional Charges & Freight WHN |
|---|---|---|---|---|---|
| 144. | C72601095 | 6/24/97 | Acme Office Systems | 60619 | Additional Charges |
| 145. | C82601106 | 8/14/98 | Donnegan Systems | 68405 | File Folders & Labels PM |
| 146. | 2EA-123 | 9/24/02 | Quality Image | | Various Toners for Court of Appeals Personnel |
| 147. | 2EA-123 | 9/24/02 | Quality Image | 116924 | Various Toners for the Court of Appeals |
| 148. | 6AL1798 | 9/27/96 | Fens Associates | | Furniture for Dep. Circ. Libr. Boston |
| 149. | 6AL1798 | 9/27/96 | Fens Associates | 79791 | Conference Table Boston Library |
| 150. | 9AL0183 | 9/27/99 | Arnold Geisler Furniture | | Furniture for 1st Circuit Archives Boston Library |
| 151. | 9AL0183 | 9/27/99 | Arnold Geisler Furniture | 89476 | Furniture for 1st Circ. Archives Bookcases & Display Cases |
| 152. | 9AL0188 | 9/29/99 | SIRSI | | Bar Code Labels Boston Library |
| 153. | 9AL0188 | 9/29/99 | SIRSI | 83934 | Bar Code Labels for Boston Library |

| | | | | | | Certificates |
|---|---|---|---|---|---|---|
| 154. | C02403003 | 2/11/00 | Blanchard Press Inc. | | 83391 | |
| 155. | C02403004 | 5/16/00 | Blanchard Press Inc. | | 86074 | Admission Certs. |
| 156. | C02403008 | 7/12/00 | Blanchard Press Inc. | | 87913 | Admission Certs. |
| 157. | C02403009 | 9/14/00 | Blanchard Press Inc. | Order No. 00-537 | 89952 | |
| 158. | C12403011 | 7/27/01 | Massachusetts Envelope Co. | 101109, 101110 | 101042 | |
| 159. | C12403013 | 8/23/01 | Massachusetts Envelope Co. | Acct. 00417950 | 102014 | |
| 160. | C22403007 | 12/20/01 | Donnegan Systems Inc. | b18887 | | |
| 161. | C22403007 | 12/20/01 | Donnegan Systems Inc. | B18887 | 106627 | |
| 162. | C22403024 | 9/25/02 | Blanchard Press Inc. | 02-484 | 116454 | |
| 163. | C32403001 | 11/5/02 | Blanchard Press Inc. | 02-614 | 117863 | |
| 164. | P00-197 | 1/20/00 | Amherst Corporate Computer | | 82971 | C4127X HP4000 Toner |

| | | | | | |
|---|---|---|---|---|---|
| 165. | P00-213 | 1/27/00 | Amherst Corporate Computer | | 82977 | 92298A HP Toner |
| 166. | P00-415 | 11/3/99 | Amherst Corporate Computer | | 80932 | HP2SI Toner |
| 167. | P00-415 | 11/3/99 | Amherst Corporate Computer | | 80932 | 4127X Toner |
| 168. | P00-415 | 11/3/99 | Amherst Corporate Computer | | 80932 | 92298A Toner |
| 169. | P00-415 | 11/3/99 | Amherst Corporate Computer | | 80932 | Shipping/Handling |
| 170. | P01-673 | 7/11/01 | Amherst Corporate Computer | | 100825 | HP C4217X Toner Cartridge |
| 171. | P02-1084 | 9/30/02 | Amherst Corporate Computer | | 116679 | Smart Print Toner Cart 4100 Series |
| 172. | P02-1084 | 9/30/02 | Amherst Corporate Computer | Order #57173 | 116679 | Max Cap Toner Cart Laserjet 8100 Series |
| 173. | P02-296 | 1/16/02 | Amherst Corporate Computer | 11018445 | 106996 | Toner Cartridge Ultraprecise for LJ 4000 |
| 174. | P02-350 | 2/8/02 | Amherst Corporate Computer | | 107937 | Toner Cartridge 6 800PGS for LJ |
| 175. | P02-576 | 4/22/02 | Amherst Corporate Computer | 11033385 | 110275 | Toner Cart. For Laserjet 4000 |

| | | | | | |
|---|---|---|---|---|---|
| 176. | P02-945 | 8/20/02 | Amherst Corporate Computer | 1105433 | 115033 | Max Cap Toner Cart Laserjet 81XX Series |
| 177. | P02-945 | 8/20/02 | Amherst Corporate Computer | 1105433 | 115033 | Smart Print Toner Cart 4100 Series |
| 178. | P02-945 | 8/20/02 | Amherst Corporate Computer | 11054334 | 115033 | Ultraprecise Toner Cart 4000 Series |
| 179. | P03-862 | 9/29/03 | Amherst Corporate Center | | 129282 | Item #00633466, Part #6R929, Order #69903 |
| 180. | P03-862 | 9/29/03 | Amherst Corporate Center | | 129282 | Ultraprecise Toner Cart for 4000/N/T/TN 10K Cap |
| 181. | P03-862 | 9/29/03 | Amherst Corporate Center | | 129282 | Smart Print Toner Cart-4200 Laserjet |
| 182. | P01-523 | 5/9/01 | Amherst Corporate Center | | 98539 | Black Smart Toner Cartridge for Laserjet 4000 Series |
| 183. | P01-523 | 5/9/01 | Amherst Corporate Center | | 98539 | Memorex 100 Pk 3.5 Disk |
| 184. | P01-523 | 5/9/01 | Amherst Corporate Center | | 98539 | CDR - 700 MB 50 PK |
| 185. | P01-523 | 5/9/01 | Amherst Corporate Center | | 98584 | HP C4127X Toner Cartridge |
| 186. | P01-523 | 5/9/01 | Amherst Corporate Center | | 98584 | HP C4182X Toner Cartridge |

-18-

| | | | |
|---|---|---|---|
| 187. | P01-523 | 5/9/01 | Amherst Corporate Center | 98584 | Sony 25/50 AIT 1 8 MM Tape |
| 188. | 00PSA251 | 9/27/00 | Amherst Corporate Computer | | |
| 189. | 00PSA251 | 9/27/00 | Amherst Corporate Computer | | |
| 190. | 00PSA251 | 9/27/00 | Amherst Corporate Computer | | |
| 191. | 00PSA251 | 9/27/00 | Amherst Corporate Computer | 91127 | Toner Cartridges, Boston Office |
| 192. | 03PSA188 | 9/26/03 | Amherst Corporate Computer | | |
| 193. | 03PSA188 | 9/26/03 | Amherst Corporate Computer | | |
| 194. | 03PSA188 | 9/26/03 | Amherst Corporate Computer | | |
| 195. | 03PSA188 | 9/26/03 | Amherst Corporate Computer | | Software |
| 196. | 03PSA188 | 9/26/03 | Amherst Corporate Computer | | Software/Equipment |
| 197. | 11107 | 7/12/00 | Amherst Corporate Computer | 88942 | HP8100DN Printer form JMS |

-19-

| 198. | 11107 | 7/12/00 | Amherst Corporate Computer | | C4182X – Toner for HP8100 |
| 199. | 11729 | 2/7/01 | Amherst Corporate Computer | 95343 | HP Laserjet 1100 |
| 200. | 11729 | 2/7/01 | Amherst Corporate Computer | 95343 | Toner for HP 1100 |
| 201. | 7591 | 8/20/97 | Amherst Corporate Computer | 57683 | Toner |
| 202. | 8E3101-17 | 1/15/98 | Amherst Corporate Computer | | 8MB Simm Frontpage 98; HP4000 Printer |
| 203. | 8E3101-17 | 1/15/98 | Amherst Corporate Computer | 62661 | Laserjet printer; Frontpage 98; SIM 2x36 8 MG Upgrade |
| 204. | 97PSA162 | 9/15/97 | Amherst Corporate Computer | 58539 | Computer Toner |
| 205. | P00-197 | 1/20/00 | Amherst Corporate Computer | 82971 | C4127X HP4000 Toner |
| 206. | P00-213 | 1/27/00 | Amherst Corporate Computer | 82977 | 92298A HP Toner |
| 207. | P00-45 | 11/3/99 | Amherst Corporate Computer | 80932 | HP4SI – Toner |
| 208. | P00-45 | 11/3/99 | Amherst Corporate Computer | 80932 | 4127X Toner |

| | | | | |
|---|---|---|---|---|
| 209. | P00-45 | 11/3/99 | Amherst Corporate Computer | 80932 | 92298A Toner |
| 210. | P00-45 | 11/3/99 | Amherst Corporate Computer | 80932 | Shipping/Handling |
| 211. | P00-455 | 5/31/00 | Amherst Corporate Computer | | Toner HP4000 |
| 212. | P00-455 | 5/31/00 | Amherst Corporate Computer | 87169 | CDR Recordable Media 10Pk. |
| 213. | P00-455 | 5/31/00 | Amherst Corporate Computer | 87169 | Toner Cartridge HP4000 |
| 214. | P00-456 | 5/31/00 | Amherst Corporate Computer | 87512 | Toner HP 4000 |
| 215. | P00-457 | 5/31/00 | Amherst Corporate Computer | 87513 | Toner HP4000 |
| 216. | P00-46 | 11/3/99 | Amherst Corporate Computer | 80933 | 4127X Toner |
| 217. | P00-46 | 11/3/99 | Amherst Corporate Computer | 80933 | 92298A Toner |
| 218. | P00-46 | 11/3/99 | Amherst Corporate Computer | 80933 | Shipping/Handling |
| 219. | P00-478 | 6/8/00 | Amherst Corporate Computer | 87170 | Toner HP4000 |

-21-

| | | | | |
|---|---|---|---|---|
| 220. | P98-675 | 9/30/98 | Amherst Corporate Computer | 98584 | C4127X Toner Cartridge |
| 221. | P98-675 | 9/30/98 | Amherst Corporate Computer | 98584 | C4128X Toner Cartridge |
| 222. | P00-235 | 2/8/00 | Amherst Corporate Computer | 83425 | C4127X Toner Cartridge |
| 223. | 11107 | 7/12/00 | Amherst Corporate Computer | | C4128X Toner |
| 224. | 11582 | 12/15/00 | Amherst Corporate Center | 94102 | Toner |
| 225. | 11729 | 2/7/01 | Amherst Corporate Center | 95343 | Toner for HP 1100 |
| 226. | 11845 | 3/9/01 | Amherst Corporate Center | 96271 | Toner for HP 1100 |

---

DONOGHUE BARRETT & SINGAL, P.C.

---

July 29, 2005

**By Hand Delivery**

Francis Dello Russo, Administrative Manager
United State District Court
District of Massachusetts
One Courthouse Way, Suite 2300
Boston, MA 02210

Dear Frank:

Based on our telephone conversation yesterday, it is my understanding that you will accept service of the enclosed trial subpoena, which subpoena is directed to Christine Karjel.

It is not our desire to create a lot of work for you and, in that regard, we are ready, willing, and able to locate the documents ourselves if it is possible for you to put them in a room for us. Please let me know if that is possible. Also, with respect to request #2, if you provide us with the summary printout/s, I can try to narrow the request further.

In addition, while the subpoena by necessity includes the trial date, we obviously need to receive the requested documents as soon as possible as part of our trial preparation. Thus, it probably makes sense to produce the requested documents in batches, rather than wait until they are all gathered.

Please complete and return the enclosed affidavit, as well.

Please let me know if you have any questions. Thank you for your courtesy.

Very truly yours,

Michelle R. Peirce

MRP/jt

Enclosure

cc:     Christine Karjel, Financial Admin.