UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TIMOTHY P. SCHROEDER and<br>STEVEN A. MILKIEWICZ,<br><br>              Defendants. | )<br>)<br>)<br>)   CRIMINAL NO. 04-10339-PJB<br>)   NH CR04-213-01-PB<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF MICHELLE R. PEIRCE

I, Michelle R. Peirce, submit this affidavit in support of the factual statements set forth in the accompanying "Opposition to Motion to Quash Subpoena Served Upon Third Party Witness Clerk of Court." I hereby swear based on personal knowledge, or where indicated on information and belief, as follows:

1. I was admitted to the Massachusetts Bar in 1990.

2. I am a member in good standing of the Bar of the Commonwealth of Massachusetts.

3. I am admitted to practice law in the following courts and jurisdictions: (a) state court of the Commonwealth of Massachusetts and (b) United States District Court for the District of Massachusetts.

4. I am an associate of the law firm of Donoghue, Barrett & Singal, P.C. and currently represent defendant Steven Milkiewicz in this action.

5.  With the government acting as a liaison to the Clerk's Office, we undertook a "two-tiered" process to request additional documents from the Clerk's Office. First, we requested and received certain summary printouts apparently from the Clerk's Office's financial system, and other departments', purchases over various time frames. Second, the intention was to request detail, where necessary, on certain transactions contained in those summary printouts. The printouts we received from the first step, produced at two separate times, took up two file folders that were approximately six to nine inches each and represented an estimated thousands of transactions. The only "back-up" documentation produced during this "first tier" were underlying documents, contained in six small, stapled bundles, for Probation Department transactions. The rest of the materials produced contained summary data only.

6.  Either I, or people acting at my direction, reviewed the summary printouts in an effort to cull out a narrow set of documents for which we needed back-up documentation. The documents requested are but a small subset of the transactions listed on the summary printouts discussed above. But, when we got to step two, I learned from AUSA Levenson, who himself and/or through an agent, was acting as a liaison with the Clerk's Office, that the Clerk's Office preferred to respond by subpoena. I confirmed this with Frank Dello Russo with whom, I was told, Mr. Levenson was dealing; Mr. Dello Russo agreed to accept service on behalf of the Clerk's Office and asked that the subpoena be directed to Christine Karjel.

7. My office remains ready, willing, and able to review the Clerk's Office's documents requested via the subpoena ourselves, but needs access to do so. Alternatively, if the Clerk's Office will tell us the best way to reorganize the chart in order to facilitate finding and duplicating the documents requested, we will redo that chart.

8. I have worked with the Clerk's Office's counsel, Tom Reed, to narrow the areas of dispute related to this subpoena.

9. During our work on this case, and based on a review of discovery obtained to date, it does not appear that "bids" or "quotes" were routinely obtained in the manner the indictment alleges. While I am hampered by not having all applicable rules and regulations – and therefore, the "bidding" thresholds – on information and belief, the so-called bidding requirements do not appear to have been followed routinely.

Signed under the penalties of perjury, this 24th day of August, 2005.

_/s/   Michelle R. Peirce_
Michelle R. Peirce