UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 04-10339-PJB |
| ) | NH   CR04-213-01-PB |
| STEVEN A. MILKIEWICZ, ) | |
| ) | |
| Defendant. ) | |

UNITED STATES' TRIAL MEMORANDUM

The United States of America, by its undersigned counsel, submits this memorandum in

order to advise the Court and defense counsel regarding anticipated evidence at trail.

OFFENSES CHARGED

The Indictment charges Steven A. Milkiewicz with Conspiring (with Timothy Schroeder)

to defraud the United States (Count 1).  Milkiewicz is also charged with presenting false claims

against the United States (Counts 2-9), bribing a federal official (Count 11), and with subscribing

and false tax returns (Counts 17-21).

As described in the Indictment, Schroeder was formerly the Property and Procurement

Administrator for the Clerk of the Court for the United States District Court  for the District of

Massachusetts.  Milkiewicz, doing business under the names C.J. Sales and J. Cameron

Company,  was in the business of selling office supplies, with the Court as his primary customer.


Schroeder and Milkiewisc conspired to rig price quotes for various office supplies and

office furniture that Schoeder purchased for the Court, submitted forged and/or sham price

quotes in order to guarantee that Milkiewicz would obtain purchase orders for his companies,

with no actual price competition.  As Milkiewicz profited by charging inflated prices for a wide

variety of items, he routinely "kicked-back" a portion of his profits to Schroeder.  To further pad

Milkiewicz's profits – and the kickbacks to Schoeder – the two conspired to steal outright, by

allowing Milkiewicz to bill the Court for quantities of supplies and furniture substantially in

excess of what was actually delivered.

Milkiewisc paid his kickbacks to Schroder in cash, at irregular intervals, commonly

delivering the money at the "Imperial Garden" a bar/restaurant where the two met on a near daily

basis for drinks and gambling.

The false tax return counts are all based on Milkiewicz's filing of income tax returns that

omitted a significant portion of his gross receipts from his businesses and that overstated his

costs of goods sold.

ELEMENTS OF THE OFFENSES

A.    Conspiracy to Defraud the United States (18 U.S.C. §371)

1.    The Statute

Title 18, United States Code, Section 371, provides as follows:

If two or more persons conspire either to commit any offense against the United
States, or to defraud the United States, or any agency thereof in any manner or for
any purpose, and one or more of such persons do any act to effect the object of
the conspiracy, each shall be [guilty of an offense].

2.    Elements

The charge of conspiracy to defraud the United States requires proof of the following

elements:

(1)    the agreement specified in the indictment existed between at least two
individuals;

(2)    the purpose of that conspiracy was to defraud the United States or an agency
thereof;

2

(3)     the defendant willfully joined in that agreement; and

(4)     one of the conspirators committed an overt act in an effort to further the purpose of the conspiracy.

Adapted from First Circuit Pattern Jury Instructions (Criminal) §4.03;  United States v. Piper, 35 F.3d 611, 614-15 (1st Cir. 1994); United States v. Rivera-Santiago, 872 F.2d 1073, 1078-80 (1st Cir. 1989).

3.     Elements Discussed

Section 371 prohibits two distinct types of conspiracies; conspiracies to defraud the United States and conspiracies to commit an offense against the United States. Whereas the more frequently cited offense clause governs conspiracies to commit specific offenses, which are defined throughout the federal criminal code, the defraud clause covers agreements to interfere with or to obstruct government's lawful functions.  See United States v. Bilzerian, 926 F.2d 1285, 1301 (2d Cir. 1991).  In the case at bar, the charge is laid under the "defraud" clause.

The "defraud" clause of Section 371 expressly criminalizes schemes to defraud "in any manner or for any purpose."  Thus, the statute encompasses a broad range of fraud schemes.

> To conspire to defraud the United States means to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official actions and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention.

Hammerschmidt v. United States, 265 U.S. 182, 188 (1924).

As the Supreme Court has noted, "[i]t has long been established that this statutory language is not confined to fraud as that term has been defined in the common law.  It reaches 'any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any

department of government[.]'" <u>Dennis v. United States</u>, 384 U.S. 855, 861 (1966) (citations

omitted). Accordingly, unlike the mail and wire fraud statutes, the "defraud" clause of Section

371 does not include (or require) an "honest services" provision comparable to 18 U.S.C. §1346.

<u>See McNally v. United States</u>, 483 U.S. 350, 358 n.8 (1987). In a case like this one, however,

the distinction between monetary and non-monetary fraud is largely academic. Here the scheme

to defraud consisted of inflating prices paid by the Court for supplies and charging for supplies

that were never delivered, while the conspirators divided the spoils. This fraud scheme

undoubtedly deprived the District Court of Schroeder's honest services – as is generally true

when an insider participates in a fraud scheme – but the scheme was equally designed to, and

did, produce direct monetary losses to the United States and a concomitant gain to the

defendants. <u>Compare United States v. Osser</u>, 864 F.2d 1056, 1063 (3d Cir. 1988) ("Once having

found that [defendant] had participated in the bid rigging, the jury could not escape finding

financial loss as part of the scheme.")

    B.    <u>PRESENTING FALSE CLAIMS</u>

1.    <u>The Statute</u>

Title 18, United States Code, Section 287, provides as follows:

> Whoever makes or presents to any person or officer in the civil, military, or naval
> service of the United States, or to any department or agency thereof, any claim
> upon or against the United States, or any department or agency thereof, knowing
> such claim to be false, fictitious, or fraudulent, shall be [guilty of an offense].

2.    <u>Elements</u>

The False Claims offense requires proof of the following elements:

1.    Defendant presented (or caused to be presented) to a department or agency
    specified in the indictment a claim against the United States;

2.     At the time that the claim was presented, the department or agency specified in the indictment was a department or agency of the United States;

3.     The claim presented was false, fictitious and/or fraudulent as charged in the indictment;

4.     Defendant knew that the claim was a false, fictitious and/or fraudulent; and

5.     The false, fictitious and fraudulent aspect of the claim was material.

Adapted from, 2 Fed. Jury Prac. & Instr. § 30.03 (5th ed.)  (False, Fictitious, And Fraudulent Claims (18 U.S.C.A. § 287)).

3.     Elements Discussed

The Courts of Appeals are divided on whether materiality is an element of the False Claims offense under Section 287, with a majority of circuits concluding that it is not.  See United States v. Nash, 175 F.3d 429, 433 (6th Cir. 1999) (noting division).  The First Circuit does not appear to have addressed the question.  While a variety of arguments have been mustered on either side of the issue, the plain language of the statute supports the majority view; unlike the False Statements statute, 18 U.S.C. §1001, Section 287 does not on its face include any requirement of materiality.

Nevertheless, notwithstanding the strength of the majority view, in light of the division among the circuits, the United States suggests as a matter of prudence that the Court should instruct the jury in this case that materiality is an element of the offense.  See generally United States v. Gaudin, 515 U.S. 506, 511 (1995) (where materiality is an element, the issue is for the jury).

C.     BRIBERY OF FEDERAL OFFICIAL

1.     The Statute

With respect to the giving of bribes, 18 U.S.C. §201, provides in pertinent part:

(b)     Whoever–

    (1)     directly or indirectly, corruptly gives, offers or promises anything of value to any public official . . . with intent–

        (A)     to influence any official act; or

        (B)     to influence such public official . . . to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

        (C)     to induce such public official . . . to do or omit to do any act in violation of the lawful duty of such person ;

. . . shall [be guilty of an offense].

2.     Elements

In its basic form, the charge of giving, offering, or promising a bribe to a public official

requires proof of the following elements:

    1.     Defendant gave, offered, or promised something of value as described in the indictment to--

    2.     An individual who was, at that time, an official of the United States or was acting on behalf of the United States; and

    3.     Defendant made the gift, offer, or promise corruptly with the intent to influence an official act.

2 Fed. Jury Prac. & Instr. § 27.03 (5th ed.) (Giving, Offering, Or Promising A Bribe To A Public

Official (18 U.S.C.A.§ 201(b)(1)(A))).

D.    SUBSCRIBING FALSE TAX RETURNS

1.    The Statute

Section 7206(1) of Title 26, the false tax return statute, provides in pertinent part:

Any person who–
     (1) Declaration under penalties of perjury.--Willfully makes and
subscribes any return, statement, or other document, which contains or is verified
by a written declaration that it is made under the penalties of perjury, and which
he does not believe to be true and correct as to every material matter . . . shall be
guilty of a felony

26 U.S.C. §7206(1).

2.    Elements

The elements of the 26 U.S.C. §7206(1) offense are:

(1)    Defendant made and subscribed a return which was false as to a material matter;

(2)    The return contained a written declaration that it was made under the penalties of
       perjury;

(3)    Defendant did not believe the return to be true and correct as to every material
       matter; and

(4)    Defendant acted willfully, with specific intent to violate the law.

See generally United States v. Bishop, 412 U.S. 346, 350 (1973); United States v. Drape, 668

F.2d 22, 25 (1st Cir. 1982).

3.    Elements Discussed

The First Circuit's pattern jury instructions list only three elements for this offense and do

not define as a separate element that the defendant filed a tax return that was, in fact, false.  See

Committee on Pattern Criminal Jury Instructions, First Circuit, Pattern Jury Instructions

(Criminal Cases) §4.27.  The pattern instructions note, however, that these elements can be

modified to reflect that "'[A] return that omits material items necessary to the computation of

income is not "true and correct" within the meaning of section 7206.'"  Id. (quoting Siravo v. United States, 377 F.2d 469, 472 (1st Cir. 1967)).

In proving a violation of Section 7206(1), the government need not establish that a tax loss actually occurred.  See, e.g., United States v. Puerto, 730 F.2d 627, 630 (11th Cir. 1982) (conspiracy); Silverstein v. United States, 377 F.2d 269 (1st Cir. 1967) (false tax return).


ANTICIPATED EVIDENCE

TESTIMONY

The United States anticipates calling some or all of the following witnesses:

1.    Court Officials

Francis Dello Russo (Administrative Manager, U.S. District Court), William Ruane (Chief Deputy Clerk, U.S. District Court) and/or Tony Anastas (former Clerk, U.S. District Court), are expected to describe the procurement rules and practices of the District Court during the relevant time period.  They will also describe internal reviews and audits that were performed to evaluate the Court's compliance with competitive bidding policies.  In addition, they will identify various documents, such as putative price quotations, that were found in Schroeder's office and elsewhere in the office of the Clerk of Court.

2.    Vendors/Bidders

Richard E. Kelly, Michael R. Tracey and William T. Pike all worked for companies that submitted price quotes for various goods and services to be provided to the Court during the period of the fraud.  Pike and Tracey will identify as fabrications certain other price quotes – purportedly submitted by their respective companies – that were found in the Court's

procurement records.  They will explain that they did not submit such bids and were unaware the such bids had been submitted in their names.

Kelly will describe his practice of submitting intentionally overstated price quotations for certain items, on the understanding that Milkiewicz would, upon winning the order, buy the goods from Kelly's company.  Kelly will also identify invoices reflecting his company's sales of goods, to Milkiewicz, for delivery to the Court.

3.    Keepers of Records

The United States hopes that most or all of the anticipated testimony by Keepers of Records will be subject to stipulation by the parties.  The Keepers of Records fall into the following categories:

a.    Vendors of Goods

In keeping with Fed. R. Evid. 902(11), the United States has provided defendant with approximately 35 affidavits (which are in the form of proposed stipulations) with attached documents, identifying business records of various vendors who supplied goods and services to Milkiewicz.  Such records reflect the dollar amounts that Milkiewicz paid for goods that were ultimately provided to the Court.  These records also reflect the quantities of goods that Milkiewicz purchased, quantities that – as charged in the indictment – fall short of the quantities for which the Court was billed.

b.    Payors

Several businesses that supplied goods and services to Milkiewicz and/or directly to the Court paid commissions to Milkiewicz.  Those commissions constitute income, for tax purposes. The records produced by these businesses identify payments made to Milkiewicz.

9

c.    Payments from the Court

The Court's records reflect purchases from both of the companies through which Milkiewicz did business, J. Cameron Company and C.J. Sales. The Court's payments for such purchases constitute the largest single source of Milkiewicz's income during the period in question.

As noted below, the United States has prepared summary charts which summarize these voluminous business records.

d.    Bank Account Records

The United States has supplied defendant, during discovery, with copies of affidavits attesting to the authenticity of bank account records for various accounts held by Milkiewicz and by Schroeder during the pertinent time period. The United States anticipates referring to, and/or offering summaries of, selected items from such bank accounts for several purposes. First, checks from Milkiewicz's accounts to suppliers of goods were used to identify vendors (whose sales to Milkiewicz are summarized in charts as noted above). Second, payments from Milkiewicz's and Schroeder's accounts reflect a portion of their joint drinking and gambling activity. Third, deposits into Milkiewicz's accounts were used to identify sources of income (and will be summarized in a chart) as part of the calculation of his gross receipts from his business. Fourth, payments from Milkiewicz's accounts to various vendors were used (and will be summarized in a chart) to determine Milkiewicz's costs of goods sold in connection with his business.

d.    Tax Returns

A representative of the Internal Revenue Service will identify Milkiewicz's tax returns, as filed.

e.    Travel Records

The United States will offer records reflecting Schroeder's and Milkiewicz's travel together to Las Vegas on several occasions.

f.    Post Office Box Rentals

A postal inspector will identify post office box rental information that links Milkiewicz to both J. Cameron Company and C.J. Sales.

4.    Tax Preparer

James H. Keegan, who prepared Milkiewicz's taxes, will describe the practices and procedures that he followed and the information that Milkiewicz provided to him for that purpose.  He will also identify records from his file.

5.    Restaurant Owner

David Wai Pui, an owner of the Imperial Garden restaurant, will testify regarding Schroeder's and Milkiewicz's regular presence at that establishment for purposes of drinking and gambling (using the restaurant's Keno machines).

6.    Admissions by Defendant

Special Agent Edward Kappler, FBI, will describe his interview with Milkiewicz during which Milkiewicz denied making any payments to Schroeder and offered other false exculpatory information.

Kappler will also identify records that were seized, pursuant to a search warrant, from Schroeder's office.

The United States will also offer a letter, written by Milkiewicz's former attorney, Brian McMenimen, indicating that Milkiewicz had no records, other than records from New England Office Supply, reflecting purchases of goods that were purportedly supplied to the Court.

Finally, the United States will offer testimony by an individual, Francis Murphy, regarding an oral statement by Milkiewicz, within the past year, regarding the anticipated testimony of William Pike.

7.    Co-Defendant Timothy Schroeder

Co-defendant Timothy Schroeder is expected to testify regarding his own role in the conspiracy to defraud the Court and regarding his personal relationship with Milkiewicz, including their drinking and gambling activity.

Schroeder is expected to testify, consistently with his guilty plea, that he conspired with Milkiewicz to put false and fictitious price quotations in the Court's procurement files, in order to create the appearance that he was following competitive bidding procedures.  Schroeder is also expected to describe his practice of falsely confirming delivery of goods in order to conceal the fact that he and Milkiewicz had conspired to bill the Court for goods that were never delivered.  Schroeder will describe his receipt of bribes/kickbacks from Milkiewicz and his use of that money to support his drinking and gambling habits.

8.    Summary Witness

Special Agent John Wlodyka, IRS-CI, will testify as a summary witness to describe the sources of voluminous information that bears upon the charges in this case.  Using summary charts, to be offered pursuant to Fed. R. Evid. 1006, Agent Wlodyka will review the following:

(1)     A comparison between the District Court's records reflecting purchases of goods from Milkiewicz's companies and various vendor's records reflecting Milkiewicz's purchases of goods from those vendors[1];

(2)     A comparison of the figures reported on Milkiewicz's tax returns, including reported Gross Receipts and Cost of Goods Sold for Milkiewicz's business, with the Milkiewicz's actual Gross Receipts and Cost of Goods Sold, as determined by investigation.

(4)     Summaries of expenditures by Milkiewicz and Schroeder at the "Imperial Garden" an restaurant/bar where the two conspirators frequently met for the purpose of delivering checks to Milkiewicz and for drinking and gambling.

(5)     Timeline of gambling-related travel by Milkiewicz and Schroeder.

---

1.     To the extent that Milkiewicz could have purchased supplies for cash, such cash transactions would not be captured in the summary chart unless the vendor in question received payment in check on some other occasion.

EXHIBITS

The United States will offer documentary evidence, in the following rough categories:

| Exhibit Numbers | Type of Documents |
| --- | --- |
| 1-19 | Summary Charts |
| 20-25 | Clerk's Office Internal Reviews and Admin. Manual |
| 26-33 | Miscellaneous |
| 34-40 | Tax returns and associated paperwork (Tax Preparer copies) |
| 41-55 | Tax Returns and IRS transcripts (originals and certified copies) |
| 56 | Records reflecting Travel by Schroeder and Milkiewicz |
| 57-67 | Bank Records reflecting payments to "Imperial Garden" |
| 100-111* | Court Finance Records |
| 200-211* | Court Copies of Checks paid to Milkiewicz Companies |
| 300-329* | Records from Schroeder's office (Search Warrant) |
| 400-433* | Records from Schroeder's office (produced by clerk) |
| 500(a-x)-511* | Vendor Records (with affidavits) |
| 550(a-k) | Payor Records (with affidavits) |

EVIDENTIARY ISSUES

---

\*      For records in the 100, 200, 300, 400, 500 series, the United States has marked with separate numbers those particular documents to which it intends to direct the various witness's attention. Items that relate directly to the eleven transactions described in the "overt acts" section of the Indictment have been given corresponding numbers. Thus, by way of example, Exhibits 10**9**a&b, 20**9**, 40**9**a-d and 50**9**, all pertain to the ninth transaction described in the "overt acts" section. Those documents, which come from different sets of records, are:

Exhibit 109a:  Voucher for payment of $17,480.00 to J. Cameron Company
Exhibit 109b:  Invoice from J. Cameron Company for 400 cartons of copying paper.
Exhibit 209:   $17,480.00 check issued by the Court, payable to J. Cameron Company.
Exhibit 409a:  Purchase order to J. Cameron Company for 400 cartons of copying paper.
Exhibit 409b:  J. Cameron Company price quote for 400 cartons of copying paper.
Exhibit 409c:  C.J. Sales price quote for 400 cartons of copying paper.
Exhibit 409d:  New England Office Supply price quote for 400 cartons of copying paper.
Exhibit 509:   Invoice reflecting J. Cameron Company purchase of 300 cartons of paper, for delivery to the Courthouse.

15

1.    <u>Admissibility of Business Records Authenticated Pursuant to F.R.E. 902(11)</u>

On July 22, of this year, the United States provided the Defendant with proposed Affidavits/Stipulations regarding the testimony of record-keepers who are expected to identify numerous and voluminous business records pertinent to this case.  The underlying records were attached to the Affidavits and had previously been provided to the Defendant during discovery.

Under Fed. R. Evid. 902(11), these affidavits, which attest to the authenticity of the records and to their status as business records, would suffice to allow the admission of the business records in question.  However, the Supreme Court's decision in <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), calls into doubt the continued viability Rule 902(11).  In an unreported decision, one district court has concluded that the procedures of Rule 902(11) do not survive <u>Crawford</u>.  <u>United States v. Wittig</u>, 2005 WL 1227790, *2 (D.Kan. 2005).

That the defendant may have a right, under the Sixth Amendment, prolong the trial by insisting on his right to "confront" the keepers of the records does not, however, require that the Court provide an incentive to do so.  Indeed, as a matter of fairness and efficiency, the United States suggests that the best better course is to ensure that – to the extent that keepers of records may have to be called – their testimony will not serve as a platform for protracted digressions.  Thus, the same court which concluded that, under <u>Crawford</u>, evidence could not be admitted pursuant to Rule 902(11) without the defendant's consent, also made clear that the defendant should not be tempted into thinking that his assertion of this right would also provide him a platform for launching diversions:

> The Court cautions the defendants that although the government will be required to admit documents through live witnesses, rather than by use of the Rule 902(11) procedure, the Rules of Evidence shall be enforced in defendants' upcoming trial.

16

> Particularly, the Court reminds the defendants of Fed.R.Evid. 611(b), which states in relevant part: "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness."  . . .  This rule will be strictly enforced, and only cross examination on the matters testified will be allowed. Cross examination on "matters affecting the credibility of the witness," means matters affecting the credibility of the witness in their capacity as a custodian of records, not their credibility on other matters that they have not testified to on direct examination. Violations of this well-known edict will result in appropriate sanctions to deter such misconduct.

United States v. Wittig, 2005 WL 1227790, 3 (D.Kan. 2005) (footnote omitted).

    2.    Summaries Under Rule 1006

As noted above, the United States will offer, pursuant to Rule 1006, charts summarizing the voluminous records produced by various keepers of records.  Rule 1006, on its face, indicates that the summary of voluminous records is to be admitted in place of such records.  See Air Safety, Inc. v. Roman Catholic Archbishop of Boston, 94 F.3d 1, 7 (1st Cir. 1996) (". . . the evidence underlying Rule 1006 summaries need not be admitted into evidence. . . .   Indeed, such an interpretation of the rule would negate its explicit grant of *discretion* to the trial judge to order the underlying documents produced in court.") (citations omitted).  At the same time, however, Rule 1006 does not obviate the need to establish the admissibility of the underlying evidence. See United States v. Sawyer, 85 F.3d 713, 740 (1st Cir. 1996)  ("Before admitting such evidentiary presentations, the court must first ensure that each is grounded upon a 'sufficient factual basis,' *i.e.,* upon independently established evidence in the record, and that 'possible prejudice or confusion does not outweigh their usefulness in clarifying the evidence.'").

The United States anticipates that the defendant may contend that the record-keeping practices of one or more businesses are sufficiently casual as to raise doubts about the completeness of the records produced.  Such concerns, which do not challenge the authenticity

17

Case 1:04-cr-10339-PJB    Document 37    Filed 08/26/2005    Page 18 of 18

of the records, only their completeness, go to the weight of the evidence, not its admissibility.

As the First Circuit has noted:

> So long as the government, exercising due diligence, collects whatever records are reasonably available and succeeds in introducing them, it may be permitted (subject, of course, to relevancy and perscrutation under Fed.R.Evid. 403) to summarize the data it has managed to obtain. If defendants possessed exculpatory records not in the government's files, they could have offered them at trial or prepared their own summary. By the same token, if there were gaps in the charts, the defense ... had every opportunity to exploit them. In the last analysis, completeness of the underlying records was for the jury.

<u>Sawyer</u>, 85 F.3d at 740 (quoting <u>United States v. Nivica</u>, 887 F.2d 1110, 1126 (1st Cir. 1989)).

The United States respectfully suggests that – in order to minimize potential delays while the jury is seated – any issues pertaining to the use of summaries be vetted pre-trial.

                                    Respectfully submitted,

                                    MICHAEL J. SULLIVAN
                                    United States Attorney

dated:  August 26, 2005

                              By:  <u>*/s/ Paul G. Levenson*</u>
                                    PAUL G. LEVENSON
                                    Assistant U.S. Attorney
                                    John Joseph Moakley United States Courthouse
                                    1 Courthouse Way, Suite 9200
                                    Boston, MA 02210
                                    (617) 748-3147

18