UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,               )
                                        )
v.                                      )        CRIMINAL NO. 04-10339-PJB
                                        )        NH CR04-213-01-PB
TIMOTHY P. SCHROEDER and                )
STEVEN A. MILKIEWICZ,                   )
                                        )
          Defendants.                   )

## OPPOSITION TO MOTION TO QUASH SUBPOENA SERVED UPON THIRD PARTY WITNESS CLERK OF COURT

Defendant Steven A. Milkiewicz submits this Opposition to the Clerk's Office's "Motion to Quash Second Subpoena Served Upon Third Party Witness Clerk of Court." This Motion arises out of a second subpoena directed to Christine Karjel, the Financial Administrator at the United States Court in Massachusetts.

The Clerk's Office's Motion describes as "oppressive and burdensome" defendant's subpoena which calls primarily for summary printouts – obtainable by a push of a button – of information key to Mr. Milkiewicz's defense. Thus, the Clerk's Office's effort to quash defendant's narrowly-tailored requests for information that bears directly on the government's allegations here should be denied.[1]

---

[1] Defendant directs the Court to his Opposition to the Clerk's Office's first motion to quash for the facts relevant to this Opposition.

## ARGUMENT

Defendant's second subpoena to the Clerk's Office seeks three narrow and highly material categories of documents.[2] The first and third requests for summary printouts, as discussed more fully below, require nothing more from the Clerk's Office than a few minutes of someone's time and, unless there is some technological anomaly of which defendant is not aware, a mere push of a button. The second request, a request for documents communicating changes in the procurement process after Mr. Schroeder's (the procurement officer) arrest, is equally discrete and cuts to the core of the allegations in this case – whether procurement rules and regulations were violated. Each request in the subpoena is addressed briefly below:

1. A summary printout of all Clerk's Office purchasing for the period 1997 through and including 2002, the period of the alleged conspiracy.

This request is material to Mr. Milkiewicz's defense for several reasons. First, the indictment alleges that Mr. Milkiewicz did "a large volume" of business with the Court. Superseding Indictment, ¶9. Similarly, the implication throughout the indictment is that Mr. Milkiewicz received more than his fair share of the Court's business. See, e.g., ¶15 (stating that Milkiewicz and Schroeder rigged the bidding process "in order to ensure that defendant MILKIEWICZ would be the successful bidder.") Accordingly, Mr. Milkiewicz should have an opportunity to see the volume of the Court's total purchasing during the period of the conspiracy in order to accurately evaluate Mr. Milkiewicz's share and to examine the government's contention that he did a "large volume" of business at the Court.

---

[2] The Clerk's Office may no attempt to confer under Local Rule 7.1(A)(2) so the parties could narrow or eliminate the areas of dispute.

Second, a major focus of the government's charges is that Mr. Milkiewicz worked with

Mr. Schroeder to circumvent the Court's "bidding" process. Specifically, the indictment alleges

that, "[a]t times pertinent to this Indictment, procurement regulations under which defendant

SCHROEDER operated and internal policies followed by the Court required that SCHROEDER

to obtain [sic] multiple quotes and bids for contracts above a fixed dollar threshold." Id., ¶5.

Defendant believes that the evidence sought in the subpoena will show that, contrary to the

government's allegations that these policies were ironclad, the Court routinely purchased goods

and services without following these supposed "regulations" and "internal policies." Notably,

according to the affidavit submitted by Mr. Dello Russo in support of the Clerk's Office's first

Motion to Quash, all "bids and quotes" for purchases Mr. Schroeder handled were seized when

Mr. Schroeder's office was searched. Dello Russo affidavit, ¶5. Mr. Milkiewicz seeks to

compare that universe of so-called "bids" and "quotes" with the larger universe of purchases

during the alleged conspiracy in order to examine what portion of the total purchasing followed

the rules and regulations the government says Mr. Milkiewicz did not follow. Certainly, this

evidence bears on materiality and likewise on Mr. Milkiewicz's criminal intent – if the rules

were rarely, if ever, followed, a jury would likely conclude that the "bids" were not material and

that there was "bid rigging" here.

2.    All documents, memoranda, email, and/or other writing communicating or referencing
      any and all changes to the procurement process, or documentation of changes, after
      Timothy Schroeder was terminated in July 2002 including, but not limited to email or
      memoranda circulated at the courthouse by or at the direction of Tony Anastas on
      the subject of procurement after Schroeder's termination.

As noted above, the "bidding" rules and procedures are the basis for one of the three

major "schemes" the indictment describes. Superseding Indictment, ¶12 ("A major purpose and

3

objective of the conspiracy was to enable MILKIEWICZ to profit from selling goods and
services to the Court, without submitting to genuine competitive bidding." As part of
understanding and establishing what were the "regulations" and "internal policies" that Mr.
Milkiewicz supposedly helped to violate, Mr. Milkiewicz seeks documents reflecting changes to
the policy after Mr. Schroeder's termination. Those changes will provide guidance as to whether
the guides the government seeks to elevate to the status of "regulation" were, in fact, applied and
followed as is alleged in the indictment. This request is particularly important given that Mr.
Milkiewicz has still not been able to obtain a full copy of the version or versions of the Guide in
effect during the 1997-2002 time frame.

Not only is this information highly relevant, and potentially exculpatory, but it is also
narrow in scope. Presumably, such documents, if they exist, are kept in a readily-ascertainable
location or locations and should be easily produced. Moreover, a protective order could certainly
address any confidentiality concerns the Clerk's Office has.

3.     A summary printout of all Clerk's Office transactions, if any, with each of the following
       companies for the period 1991 through and including 2004:

       a.  Amherst, LLC
       b.  Amherst Computer Products
       c.  Amherst Computer Solutions
       d.  Amherst Corporate Center
       e.  Amherst Corporate Computer Sales & Solutions
       f.  Amherst Distribution Services
       g.  Amherst Equipment
       h.  Amherst Technologies

The indictment specifies two toner sales among the overt acts set forth in the conspiracy
count. Superseding Indictment, ¶¶33-37 and ¶¶65-69. On information and belief, Amherst LLC
and/or some or more of its various divisions, sold significant amounts of toner to the Court.

4

Amherst's pricing, and the adherence (or non-adherence) to the bidding process, are highly material for the reasons discussed above regarding item #1.

## CONCLUSION

For the reasons discussed above, the Clerk's Office's Motion to Quash should be denied as the documents requested are material to Mr. Milkiewicz's defense and are neither burdensome nor oppressive.

STEVEN A. MILKIEWICZ,
By his attorneys,

_/s/    Michelle R. Peirce_
Bruce A. Singal, BBO#464420
Michelle R. Peirce, BBO #557316
Carl E. Fumarola, BBO #659019
Donoghue, Barrett & Singal, P.C.
One Beacon Street, Suite 1320
Boston, MA  02108
(617) 720-5090

Dated:  August 30 2005

## CERTIFICATE OF SERVICE

I, Michelle R. Peirce, hereby certify that I have caused copies of the foregoing document to be served upon by first class mail, postage prepaid to be served upon Maryanne Michaelis, Clerk, United States District Court, District of New Hampshire, 55 Pleasant Street, Room 110, Concord, NH 03301-3941; Paul Levenson, Assistant U.S. Attorney, United States Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA  02210; and Thomas A. Reed, Esq., Holtz & Reed, LLP, 25 New Chardon Street, Boston, MA  02114, this 30[h] day of August, 2005.

_/s/    Michelle R. Peirce_
Michelle R. Peirce